# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 5504 | **DATE** | 12/7/2004 |
| **CASE TITLE** | Gardner vs. Goodwill Industries of Metropolitan Chicago, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Goodwill's motion (Doc 8-1) to dismiss Count II of Gardner's complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | DEC 0 8 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | 13 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | SCT courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
DEC 0 8 2004

VALERIA GARDNER,            )
                            )
            Plaintiff,      )
                            )
      vs.                   )            04 C 5504
                            )
GOODWILL INDUSTRIES OF      )
METROPOLITAN CHICAGO, INC., )
                            )
            Defendant.      )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant Goodwill Industries of Metropolitan Chicago, Inc. ("Goodwill") to dismiss Count II of Plaintiff Valeria Gardner's complaint. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following factual recitation is taken from the allegations of the complaint, which we must accept as true for purposes of the instant motion. Hentosh v. Herman M. Finch Univ., 167 F.3d 1170, 1173 (7th Cir. 1999). Gardner is a former employee of Goodwill. During her term of employment, she suffered a work-related injury that

caused pain in her low back and leg swelling. As a result of her medical condition, Gardner sought periodic emergency and non-emergency treatment.

On July 21, 2003, Gardner left work to obtain emergency medical treatment. Prior to this time, she had missed work because of her condition. The complaint does not specify the frequency of these occurrences or when they occurred.

Gardner did not return to work until July 28, upon advice of her physician. When she reported for work on that day, she was fired. According to the complaint, her employment was terminated because of her medically related absences. Shortly after the termination, Gardner filed a charge of discrimination with the EEOC. After her charge was dismissed and a right-to-sue letter issued, she filed the instant suit. The first count of the complaint claims a violation of the Americans with Disabilities Act. The second count alleges that Goodwill's attendance policy created enforceable contract rights and that her termination was contrary to the guidelines set forth in the policy, thus breaching the implied employment contract. Goodwill now moves to dismiss the second count pursuant to Fed. R. Civ. Proc. 12(b)(6), contending that Gardner has not stated a claim upon which relief can be granted.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510,

1520 (7th Cir. 1990). In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these principles in mind, we examine Goodwill's motion.

## DISCUSSION

Goodwill's primary challenge to the legal sufficiency of Count II denies that Gardner can allege any contractual rights to pretermination procedures with respect to her absences from work. In Illinois, employment relationships of indefinite duration are presumed to be at will, not contractual. Brown v. R.R. Donnelly & Sons Co., 650 N.E.2d 8, 9 (Ill. App. Ct. 1995). However, the presumption is not irrebuttable; it can be overcome by a showing that the parties intended that the employment relationship terminate only in certain circumstances. Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314, 318 (Ill. 1987). When the alleged contract is contained in an employee handbook or manual, Duldulao established that three requirements must be satisfied to overcome the presumption of an at-will relationship. First, the language

must contain a promise clear enough that an employee reading it would reasonably believe that the employer has made a contractual offer. Id. Second, the employee must be aware of the offer through dissemination of the policy to her. Id. Third, the employee must commence or continue to work after becoming aware of the policy, thereby accepting the employer's offer. Id.

Here, Goodwill contests the sufficiency of Gardner's allegations on the first prong only: whether the policy contains language that an employee could reasonably believe contains a promise clear enough to constitute an offer. Accordingly, we turn our attention to the language of the policy itself, which concerns employee attendance and punctuality. The policy first sets out its purpose, with the concluding statement that "[w]hen abuse of sick time becomes evident, Corrective Action, as outlined below, may be required." Compl., Exh. C at 1.

The policy then goes on to detail employees' duty to report absences in a timely manner, establishes that absences are calculated on a 12-month rolling basis, and gives specific calculations to be employed in special instances, such as one absence being counted as two if the employee fails to notify a supervisor of an absence before the start time for the shift to be missed. Some of these calculations are couched in mandatory language (e.g., ¶¶ 1, 5); others are given in permissive terms (e.g., ¶ 8). The policy then sets forth a schedule for corrective action, which particularizes specific actions to

be taken after an employee reaches certain numbers of absences within a 12-month period, culminating in termination after 15 absences. The prefacing paragraph to the schedule notes that "[t]he following schedule is a guideline for corrective action. Depending on the circumstances . . . steps may occur earlier than this schedule." Id. at 2.

Throughout the policy, an exception is noted for properly documented preapproved medical absences or use of sick time. Where it is discussed, the existence of the exception is consistently referred to in mandatory terms. For example, the policy states that when an employee uses available sick time or vacation time to attend medical appointments, "the time away from work will not count against their attendance record." Id. at 3. In addition, "approved leaves of absence and work related injuries are excluded [from absence calculations]." Id. at 2. Looking at this language in the light most favorable to Gardner, we do not think it would be unreasonable for an employee reading it to conclude that termination would not be premised upon approved absences, no matter how numerous they were.

The specificity and detail of the policy's provisions is consistent with the idea of language clear enough to constitute an offer. See Rudd v. Danville Metal Stamping Co., Inc., 550 N.E.2d 674, 676 (Ill. App. Ct. 1990). Also, at the conclusion of the policy, a section entitled "Procedure" notes that "[a]ll corrective action steps must be

documented . . . [e]xceptions to any of the above stated policy may only be made with divisional director approval in consultation with Human Resources." Id. at 4.

It is important to note at this point that Goodwill's challenge arrives very early in the life of the proceedings. Furthermore, the key concepts upon with the first Duldulao factor focuses are not the kind that are typically suited to resolution on a motion to dismiss, particularly the reasonableness of the employee's belief that an offer was being made. Courts disposing of claims such as this one at the pleadings stage generally do so based on the presence of some aspect of the handbook language that makes it patently unreasonable for the employee to detect an offer for continued employment, such as an unequivocal disclaimer of contractual obligation or a policy involving workplace conditions rather than termination procedures. See Finnane v. Pentel of America, Ltd., 43 F. Supp. 2d 891, 900 (N.D. Ill. 1999) and cases cited therein.

The policy language upon which Gardner relies does not contain any disclaimer of contractual obligation. Although not dispositive, this absence is significant to our analysis. See Duldulao, 505 N.E. 2d at 319. Moreover, the policy details the steps that Goodwill uses with respect to termination for excessive absences. While the manual does contain permissive language, the mandatory provisions discussing excused absences and within the concluding paragraph indicates that Goodwill does not have

unfettered discretion in modifying the schedules and procedures outlined in the policy. When we take these circumstances in the light most favorable to Gardner, we conclude that Goodwill has not shown that she cannot prove a set of facts that would entitle her to relief. See Conley, 355 U.S. at 45-46. Of course, that conclusion does not equate to a decision that Gardner did in fact have a contractual relationship with Goodwill, only that her allegations are sufficient to allow her the opportunity to proceed with her breach of contract claim beyond the pleading stage.

Goodwill also seeks dismissal of the portions of the second count that pertain to a breach of the covenant of good faith and fair dealing, correctly noting that Illinois does not recognize an independent cause of action for breach of the covenant. Vickers v. Abbott Laboratories, 719 N.E.2d 1101, 1114 (Ill. App. Ct. 1999). However, the obligation to deal fairly and act in good faith is implicit in every contract, particularly those that place discretion in one or both of the parties to the contract. See Midwest Energy Consultants, Inc. v. Covenant Home, Inc., 815 N.E.2d 911, 916 (Ill. App. Ct. 1999). The language of the attendance policy, if it is ultimately found to create contractual rights in Gardner, vests significant discretion in Goodwill with respect to its execution of its provisions. As a result, the covenant is potentially implicated, and there is no reason to strike the portions of the complaint that pertain to it.

## CONCLUSION

For the foregoing reasons, Goodwill's motion to dismiss Count II of Gardner's complaint is denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC - 7 2004